Louis L. Friedman, J.
Plaintiff moves for an order directing defendant to furnish him with a copy of the report of a physical examination conducted by defendants’ physician. Defendants do not oppose the motion, consenting thereto upon the argument, but cross-move for an order directing plaintiff to furnish to said defendants, “ a copy of the report of the examinations of the plaintiff which the plaintiff will use upon the trial of his action.”
The question is one which has caused a great deal of controversy over many years. At one time, there was disagreement between the First and Second Departments as to the right of a plaintiff to receive a copy of the report of defendant’s physical examination of him. The Second Department held that when a motion for a physical was made under section 306 of the Civil Practice Act, plaintiff was entitled to receive a copy of the report of that examination. (See Tutone v. Neiv York Cons. R. R. Co., 189 App. Div. 954.) On the other hand, the views of the Appellate Division in the First Department were to the contrary (Kelman v. Union Ry. Co., 202 App. Div. 487; Fineberg v. Fairmont Holding Corp., 272 App. Div. 101). The result was that attorneys who were aware of the holding and decision in the Tutone case refused to voluntarily consent to physical examinations of the plaintiffs whom they represented, and defendants were forced to make motions for such physical examinations. An attempt by a plaintiff in one case to compel a defendant to give a copy of the report of a physical examination held on consent, was rejected by the Appellate Division in Andrews v. Ghikas (278 App. Div. 658).
The Rules of the Supreme Court in the counties of New York and Bronx (First Department), as well as the present rule 9 of the Kings County Supreme Court Trial Terms Rules and similar rules of the Supreme Court in the counties within the Second Department, provide for the service upon defendant’s attorney of a copy of an affidavit of plaintiff’s doctor setting forth in detail plaintiff’s claimed injuries. By rule of the Appellate Division in the First Department (N. Y. Co. Sup. Ct. Trial Terms Rules, rule XII; Bx. Co. Sup. Ct. Rules, rule XXI), exchange of medical information of both sides was provided *771 for and, in the First Department, the problem now presented by the instant motions has been obviated by the adoption of such rule. The exchange of such information is a prerequisite to the right of the plaintiff to even place the action upon the calendars of our Supreme Court in both Departments, and it is obvious that defendant is not kept in the dark as to plaintiff’s claims of injury.
In 1957 the Appellate Division in the Third Department in Rooney v. Colson (3 A D 2d 410, motion for reargument denied 4 A D 2d 710) held that a plaintiff is entitled to a copy of the report of defendant’s examining physician even though the physician, designated by the court, be the one chosen by the defendant. In Del Ra v. Vaughan (2 A D 2d 156), the Appellate Division in the Third Department followed the previous decisions of the Second Department rather than those handed down by the First Department, upholding plaintiff’s right to a copy of the examining physician’s report. That decision was followed by Mr. Justice Silverman sitting in the City Court, New York County, in the case of Friedman v. Goldfine (N. Y. L. J., May 20,1957, p. 7, col. 2). The court in that decision pointed out the contrary views to the Kelman case {supra) held by two of the Supreme Court Justices in Bronx County (1st Dept.) in Kuyamjian v. Murrah (5 Misc 2d 204 [Eder, J.]) and Muratori v. 1231 Pugsley Ave. Realty Corp. (15 Misc 2d 276 [Hofstadter, J.]).
As far back as 1945, in Martin v. La Fonte (53 N. Y. S. 2d 415), Judge Schmidt, County Court of Westchester County, decided that a plaintiff who voluntarily granted a physical examination without the necessity of requiring that defendant make a formal motion therefor under section 306 of the Civil Practice Act, should nevertheless be entitled to a copy of the examining physician’s report. This appears to have been the first reported case where such action was taken by any of the courts in New York State. It was not until 1958 that other courts decided to grant similar applications as the one made in the Martin case. The question had come before the Appellate Division in the Second Department in Andrews v. Ghikas (278 App. Div. 658) in 1951 and at that time, the court denied plaintiff’s right to a copy of the report of a physical examination which was voluntarily given. In 1958, however, the reasoning of the Martin case was adopted by other courts. Thus in Gooch v. Blanch (14 Misc 2d 396 decided by this Justice); Nadav v. Kozlowski (15 Misc 2d 343 [Saypol, J.]); Morrello v. Kanzler (N. Y. L. J., Dec. 3.1, 1958 [Sup. Ct., Kings County, *772 Martuscello, J.]); Holborow v. Brookstein (N. Y. L. J., Dec. 1, 1958, p. 15, col. 1 [Sup. Ct., Queens County, Groat, J.]); Horn v. McCarrell (19 Misc 2d 164 [Schwartzwald, J.]) and Levey v. Hemme (7 A D 2d 646), plaintiffs were given the right to secure a copy of the report of defendant’s examining physician, even though such physical examination was voluntarily agreed to. In Mansoor v. Simon (5 A D 2d 845) decided by the Appellate Division, Second Department, an application by plaintiff for an order directing the furnishing of a copy of the report of a physical examination was unconditionally granted, even though defendant at that time requested that as a condition for furnishing a copy of said report, plaintiff should be required to furnish defendant with a copy of the reports of examination by their own examining physicians. This decision was handed down on February 17,1958.
By decision (Baum v. Nussenbaum, 19 Misc 2d 474 [Sup. Ct., Queens County, Joseph Conroy, J.]) the court in directing that a copy of defendant’s physician’s report be furnished, discussed the recent trend toward full disclosure, and despite that fact, rejected the defendant’s demand that it should receive a copy of the reports of plaintiff’s examining physicians. Judge Conroy’s decision was affirmed by the Appellate Division (7 A D 2d 991), citing the ease of Totoritus v. Stephen (10 Misc 2d 881, affd. 6 A D 2d 123). In a decision appearing in the New York Law Journal of March 3, 1959 (the same day when the Baum decision by the Appellate Division appeared), Mr. Justice Brown, Supreme Court, Kings County, came to the same conclusion in Otten v. Melbros Constr. Co. (20 Misc 2d 169).
Other decisions have followed the theory of the Appellate Division in the Baum case (supra) and have rejected the claims of defendants that they are entitled to a copy of plaintiffs’ physical examination reports, as a condition for furnishing a copy of their own report of the physical examination of plaintiff. In Bergen v. Long Is. City Sav. & Loan Assn. (20 Misc 2d 9 [Sup. Ct., Queens County, Pittoni, J.]) the court granted plaintiff’s application and denied the cross motion of defendant.
In Benning v. Phelps (249 F. 2d 47) the United States Court of Appeals, Second Circuit, held that it was not necessary that, a plaintiff submit to a defendant the report of plaintiff’s own physician, even though defendant has been required to give plaintiff copies of the reports of defendant’s physical examination of plaintiff. In view of the liberal pretrial procedure in the Federal court, this decision emphasizes the recognition by *773 the Circuit Court of the necessity for a different rule with respect to plaintiff’s own physical reports and defendant’s report of plaintiff’s examination.
In Hamilton v. Deacon (N. Y. L. J., May 6,1959, p. 12, col. 4), decided by Mr. Justice Di Gtovahna of this court came to the same conclusion and in denying defendant’s request, stated: “ There is nothing to prevent the defendant’s counsel from examining the Eule 9 papers which have been passed upon by another justice of this court.”
In Monaco v. Holderman (N. Y. L. J., March 19, 1959, p. 13, col. 7) Mr. Justice Latham, Supreme Court, Queens County, had the same questions before him. He granted the application of the plaintiff and denied the cross-application of the defendant, stating that it appeared ‘ ‘ that an authorization to examine the hospital record of the infant plaintiff has already been furnished and reports of plaintiffs’ physicians were exhibited at the time of the physical examinations by the physicians of the defendant.”
In Guevara v. Grandmore Realty Corp. and Figueroa v. Viera (N. Y. L. J., Dec. 3, 1958, p. 13, col. 1) both decided by Mr. Justice Hoestadter, Supreme Court, Bronx County, the court granted both plaintiff’s and defendant’s request for copies of reports of physical examinations. However, the decisions by the Supreme Court in the First Department were apparently based upon its enactment of rule XII of the Hew York County Supreme Court Eules, wherein provision is made for the exchange of medical reports. Such is not the rule in the Second Department.
In Atkins v. City of New York (N. Y. L. J., April 10, 1959, p. 13, col. 6 [Sup. Ct., Kings County, Hart, J.]), the court granted plaintiff’s application for a copy of defendant’s report stating: “Plaintiff may not be compelled to submit copies of his physicians’ reports as a condition precedent to the granting of this relief” (citing the Baum and Mansoor. cases, supra).
The Third Department in Rooney v. Colson (3 A D 2d 410, 412, supra) has held: “that in accordance with the modern trend toward full disclosure on both sides the plaintiff should be required to give to the defendant a copy of the report of the examination by his physician or physicians, as a condition of his obtaining a copy of the report by the .defendant’s examining physician ”.
■The Justices in the Tenth District seem to be following the holding in the Rooney case rather than the decision of the *774 Appellate Division in the Second Department in the Baum and Mansoor cases (supra). Thus, in Leyva v. Grzesik (N. Y. L. J., March 26, 1959, p. 12, col. 1 [Sup. Ct., Queens County, Latham, J.]); Re v. Tuccillo (N. Y. L. J., March 27, 1959, p. 10, col. 5 [Sup. Ct., Queens County, Latham, J.]); De Pietto v. Lo Bosco Bros, (N. Y. L. J., April 7, 1959, p. 14, col. 4 [Sup. Ct., Queens County, Latham, J.]); Newell v. Nassau Country Club (N. Y. L. J., Feb. 13,1959, p. 14, col. 5 [Sup Ct., Nassau County, Christ, J.]); Kuskin v. Lundy (N. Y. L. J., Feb. 20, 1959, p. 15, col. 1 [Sup. Ct., Queens County, Kusnetz, J.]); Green v. Devenuto (N. Y. L. J., Jan. 12, 1959, ,p. 13, col. 2 [Sup. Ct., Queens County, Kusnetz, J.]); Reiff v. McGrath (N. Y. L. J., March 20, 1959, p. 14, col. 1 [Sup. Ct., Queens County, Scileppi, J,]); Denis v. Grechkocey (N. Y. L. J., March 25, 1959, p. 12, col. 8 [Sup. Ct., Suffolk County, Hill, J.]); - Neri v. H. C. Bohack Co. (N. Y. L. J., Feb. 11, 1959, p. 14, col. 6 [Sup. Ct., Queens County, Margett, J.]); Gannon v. Aufmuth (N. Y. L. J., June 4, 1959, p. 15, col. 7 [Sup. Ct., Queens County, Groat, J.]) and Blome v. Baker (N. Y. L. J., May 8, 1959, p. 15, col, 6 [Sup. Ct., Queens County, Groat, J.]) the courts have granted a motion to compel defendants to furnish a copy of their examination of the plaintiff, but only on condition that plaintiff serve copies of his own medical report. Mr. Justice Bailey in the Supreme Court, Westchester County in Betz v. Cullen (N. Y. L. J., Jan. 21,1959, p. 15, col. 5) came to the same conclusion. In Faver v. Thylin Steel Co. (19 Misc 2d 201-202 [Sup. Ct., Kings County]) Mr. Justice Schwartzwald discussed the question of exchange of medical reports, and while denying the application of defendant that an exchange be directed, pointed out the new rule XII of the New York County Trial Term Rules. The court in the Faver case, however, also pointed up the fact that defendant is not left in the dark as to plaintiff’s claim of injuries and this proposition will be discussed hereinafter.
It is interesting to note that although the Baum case specifically rejected the application of defendants that plaintiff be required to furnish a copy of his own medical reports, one of the Justices in the Tenth Judicial District cites that decision as authority for requiring plaintiff to furnish such copies. (See Leyva v. Grzesik and De Pietto v. Lo Bosco Bros., supra.) None of the other decisions previously referred to cite the Baum case as authority; but several of them do cite the Rooney case (supra) in the Third Department. Thus, it appears that the learned Justices in the Tenth District seem to be following *775 the policy set down by the Third Department rather than that dictated by the Appellate Division in the Second Department.
This court is in complete agreement that there shall be a disclosure of medical information by both sides. But the Baum case (supra) apparently recognizes the fact that there is complete disclosure, despite the ruling that plaintiff is not required to give copies of his medical reports. For many years plaintiffs have been required to make such disclosure, and a defendant who claims that he is in the dark as to what plaintiff’s claimed injuries are, is apparently closing his own eyes to the factual information which has already been spread out before him, and to the procedures provided for his securing this information.
In the first place, defendant is entitled to and gets a physical examination of plaintiff, at which time plaintiff outlines to the examining physician the details of his claim of injuries, and the physician makes a physical examination of plaintiff to ascertain whether such injuries in fact exist, and their extent. In addition, defendant receives a verified bill of particulars outlining the injuries in detail, and which "of them are claimed to be permanent. Then again, defendant has a right to a complete examination before trial of the plaintiff, at which time plaintiff is required to answer under oath, questions pertaining to every detail of his claim. Then again, the report of at least one. of plaintiff’s physicians is made available to the defendant in the form of an affidavit submitted with the rule 9 papers, which is an absolute prerequisite to plaintiff’s being even able to have his case placed on the calendar of this court under rule 9 of our rules. Defendant also gets a written authorization to examine the hospital records of any and all hospitals in which plaintiff has received treatment for his injuries. Thereafter, and long before the case is reached for trial, the practice in the Second Department is to have a pretrial conference, at which time the court usually examines the medical reports in plaintiff’s attorneys’ possession, and on many occasions such reports are actually exhibited to defendant’s representative. Any defendant who claims that despite all of these procedures, he is being kept in the dark as to what plaintiff’s claim of injuries is, is but closing his eyes to the obvious, and such a contention must in the light of reason, be completely rejected. There is full disclosure, and there is no reason why further disclosure must take place, particularly in view of the practical and financial questions which arise, and which will be now discussed,
*776 When a defendant asks that plaintiff submit to a physical examination, it follows just as night follows day, that the result of that examination will be contained in a written detailed report, which will be filed with defendant’s attorney. When plaintiff moves that he be allowed to have a copy of.that report, he is asking for a document which is already in existence, which is in the possession of his adversary, and a copy of which may very readily and conveniently be dispatched by mail to the opposing attorney. When defendant however, asks for a copy of plaintiff’s medical reports, plaintiff finds himself in a quandary. Sometimes physicians, recognizing the fact that writing such reports will inevitably result in a visit to the courthouse as a witness on the trial, refuse to give other than oral reports over the telephone. Some reports are skimpy in nature, merely setting forth the diagnosis of plaintiff’s injuries without any of the details which are required. It many times becomes necessary that plaintiff’s attorney himself arrange for an examination of the plaintiff by some specialist, in order that plaintiff’s injuries may be completely evaluated and' reported in detail. In addition, another problem meantime arises. Lawyers who prepare cases for trial find many times upon interrogation of their own clients, that subsequent to the time when medical information was furnished to the client’s own attorney, and a bill of particulars was prepared and verified by the plaintiff, additional medical advice and treatment was sought and secured by the plaintiff. Some clients run from doctor to doctor in an attempt to secure relief from their injuries, and very often the first time that such information comes within the knowledge of the attorney is when the case is about to be prepared for trial. Any rule which requires that a copy of all medical reports be furnished to the defendant, in the absence of which the evidence could not be presented in court, would preclude plaintiff’s attorney from even subpoenaing an unwilling medical witness, or one about whose existence and treatment he became aware of for the first time shortly before the trial. While defendant may argue that they should know in advance of trial if there has been new or additional treatment, and while such argument must be recognized, the fact remains that unless defendant has become aware of the information by virtue of the bill of particulars which has been filed, plaintiff is in any event precluded from submitting the evidence.
The financial burdens of running a law office under present-day procedures are rather high. The obviously increased cost of *777 stenographic, clerical and legal help is too well recognized to require any discussion. Now, added to those costs is the increased cost of litigation. Note of issue and jury fees have almost doubled. Securing photographs, copies of hospital records, police reports and the like, cost much more than they ever did. The new Statement of Readiness Rule (Special Rule of App. Div., 2d Dept., for Sup. Ct. in Counties Within 2d Dept., eft. Nov. 18, 1957; cf. Special Rule Respecting Calendar Practice [Rules of App. Div., 3d and 4th Depts.; Rules of N. Y. and Bx. Co. Sup. Ct.]) requiring that examinations before trial be completed before the case is put on the calendar, has imposed still additional expense upon the busy lawyer’s office. Before such rule went into effect, many attorneys withheld conducting examinations before trial until a pretrial conference had been held and an attempt made to settle the case. Such procedure under the present rule is, however, hazardous, because the lawyer may find himself estopped from ever conducting an examination before trial if the case is not disposed of by settlement. Such an examination usually requires the payment of the fees of a certified shorthand reporter who must take and transcribe the minutes of the examination. This too, is an expense which in earlier days was not incurred by most negligence practitioners. Yet the great increase in population, in automobiles, and in the number of accidents, with the corresponding increase in. litigation, and the failure to increase the size of the number of judicial personnel to handle the increased volume of work, left the Appellate Division with no alternative but to adopt the Statement of Readiness Rule so that only those cases which are actually ready for trial will be part of the litigation calendar. Conceding the necessity for the adoption of the rule, it has nevertheless added to the cost of litigation. At the same time, the Appellate Division in the First Department has adopted its own rule regulating and reducing the amount of fees which attorneys are permitted to charge in this sort of litigation (¡Special Rules of Appellate Division, First Department, rule 4), and that rule is now in effect despite the existence of a respectable' amount of judicial opinion as to its doubtful legality and constitutionality. (Eight Justices and Judges voted against its legality, while 5 Judges voted to uphold the rule. In addition, 7 Justices in the Appellate Division, First Department, promulgated the rule. The 8 Justices and Judges who voted that it was illegal, were the Special Term Justice in the. Supreme Court, New York County [who is now a member of the Appellate Division which originally promulgated the *778 rule], 5 Justices in the Appellate Division, Third Department, and two Judges in the Court of Appeals.)
If this court were to require that plaintiffs give their adversaries copies of the medical statements of plaintiff’s doctors, there would be added to the increasing costs of litigation, a great deal of additional expense, consisting of payments to physicians who would refuse to prepare detailed complete statements of plaintiff’s injuries, unless they were compensated therefor. Already it is becoming public knowledge amongst the members of the legal profession that some doctors are demanding fees of $25 or $50, and in some instances even more, for even signing a medical affidavit which the lawyer has to prepare. That being so, many lawyers have contented themselves with expending the funds to get only one medical affidavit which is necessary in support of the rule 9 application, instead of getting medical statements or affidavits from all of the doctors who rendered medical services to the plaintiff. A requirement that plaintiffs’ medical statements be furnished, would make it necessary that for the protection of himself and his client, the lawyer get statements from every single doctor to whom plaintiff ever went for any kind of treatment, or else run the risk of finding himself precluded from submitting evidence of such medical treatment when the case came to trial. The already great financial burden of conducting negligence litigation, should not have added to it this additional obligation.
In a recent decision in the Supreme Court, Queens County (O’Keefe v. Mow, 19 Misc 2d 378) Mr. Justice Shapiro refused to go along with the decision of the other Justices in the Tenth District previously referred to, and in a lengthy opinion discussing the Rooney case (supra) in the Third Department, held that the doctrine of the Baum and Mansoor cases (supra) must be followed in the Second Department.
For all of the reasons herein set forth, the motion of the plaintiff to direct the defendant to furnish a copy of the report of defendant’s examining physician is in all respects granted, and the cross motion of the defendant for a copy of the report of plaintiff’s examining physicians' is in all respects denied. Defendant has, or is able to procure through existing rules and procedures, information with respect to plaintiff’s claimed injuries. Settle orders on notice.